IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* WILLIAM "BILL" SMITH, Plaintiff, | Civil No. 1:17-cv-60 |
| v. | |
| ATHENA CONSTRUCTION GROUP, INC., Defendant. | Judge Sylvia H. Rambo |

## **M E M O R A N D U M**

Plaintiff William "Bill" Smith ("Relator") brings this *qui tam* action on behalf of the United States pursuant to the False Claims Act ("FCA"), 31 U.S.C. §§ 3729-3732, against Athena Construction Group, Inc. ("Defendant"). Presently before the court is Defendant's motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(2), (3) and (6). (Doc. 17.) For the reasons that follow, the court will deny Defendant's motion, but will transfer venue in the interest of justice to the United States District Court for the District of Columbia.

**I.      Factual Background and Procedural History**

The following facts are taken from Relator's amended complaint and are taken as true for purposes of this motion to dismiss. Defendant is a general construction contractor located in northern Virginia that regularly contracts with the federal government for construction projects throughout the Mid-Atlantic and Southern regions of the United States. (Doc. 15, ¶¶ 3, 8, 27.) In bidding for and

entering into contracts with the federal government, Defendant has availed itself of federal Small Business Administration ("SBA") programs that seek to encourage the use of small businesses, service-disabled-veteran-owned businesses, and women and minority-owned businesses. (*Id.* at ¶¶ 2, 9.) Through the various SBA programs, the federal government reserves a portion of certain contracts, typically those with a value between $3,000 and $150,000, for businesses that have been certified under one or more of the SBA programs. (*Id.* at ¶ 45.) In order to be considered eligible for participation in SBA programs, Defendant was required to apply for and receive certification that it qualifies under the 8(a) Business Development Program ("8(a) BDO"),[1] the Historically Underutilized Business Zone Program ("HUBZone"),[2] the Service-Disabled-Veteran-Owned Small Business Concern Program ("SDVO"), and the Women-Owned Small Business Federal Contracting Program ("WOB").[3] (*Id.* at ¶ 46.) From 2010 to 2016, Defendant received approximately $22,000,000 in SBA program contracts related to its HUBZone and 8(a) BDO certifications. (*Id.* at ¶ 4.)

---

[1] In short, the 8(a) BDO program requires that a company demonstrate that it is (1) owned by an American citizen; (2) majority-owned by a "socially and economically disadvantaged individual(s)"; and (3) is a small business. Black, Hispanic, Native, Asian-Pacific, and Subcontinent Asian Americans are presumed to be "socially and economically disadvantaged individuals," but other individuals may qualify on a case-by-case basis.

[2] HUBZone certification is based on the location of the business in inner cities or rural communities that traditionally have low household incomes, high unemployment, or low community investment.

[3] SDVO and WOB certifications essentially require that a small business be majority-owned by service-disabled veterans or women, respectively.

Relator is a Maryland resident who previously worked for Defendant as a Director of Operations from approximately 2007 to 2012. (Doc. 15, ¶¶ 7, 105, 117.) Relator avers that he discovered numerous individuals on Defendant's "roster" of employees that he had never met or seen at a worksite. (*Id.* at ¶ 105.) When he inquired as to the identities of these employees, he was told that they were on the roster in order to satisfy the requirements of various SBA certifications held by Defendant. (*Id.* at ¶¶ 106-107.) Relator also avers that Defendant unlawfully subcontracted SBA contracts, in violation of SBA requirements. (*Id.* at 108-110.) On January 10, 2017, Relator reported the alleged violations and falsifications to the Attorney General of the United States via sealed complaint. (*Id.* at 117.) Relator avers that, in an attempt to intimidate him into withdrawing the complaint, Defendant filed a lawsuit in the Circuit Court for the County of Prince William in Virginia, seeking over $106,000 in damages for a breach of the severance agreement between Relator and Defendant. (*Id.* at 122-23.) Specifically, Defendant alleged in the Virginia state court action that Relator violated the severance agreement by filing the complaint because the allegations therein constituted "derogatory remarks" against Defendant. (*Id.* at ¶ 123.)

Relator filed the instant action on January 10, 2017, alleging, *inter alia*, *qui tam* claims under the FCA on behalf of the United States for Defendant's allegedly fraudulent statements made in order to receive various SBA certifications. (Doc.

1.) The United States filed a notice of its decision not to intervene on September 6, 2017. (Doc. 8.) Defendant filed a motion to dismiss on November 1, 2017, and Relator filed an amended complaint on November 21, 2017. (Docs. 11, 15.) Relator's amended complaint included only his FCA claim and the claim for retaliation based on Defendant's filing of the Virginia state court claim against him. (Doc. 15.) Defendant filed the instant motion to dismiss on December 5, 2017, arguing that this court lacks personal jurisdiction, that the Middle District of Pennsylvania is an improper venue, and that Relator has failed to state a claim upon which relief may be granted or has failed to plead its fraud claim with sufficient specificity. (Doc. 17.) Defendant's motion to dismiss has been fully briefed and is ripe for disposition. For the reasons discussed below, Defendant's motion will be denied, but venue shall be transferred in the interest of justice and for the convenience of the parties.

## II. **Discussion**

In its motion to dismiss, Defendant seeks dismissal of Relator's amended complaint for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), improper venue under Rule 12(b)(3), and failure to state a claim upon which relief can be granted under Rule 12(b)(6). Defendant also requests, in the alternative, that Relator's amended complaint be dismissed without prejudice for failure to plead fraud with sufficient particularity under Rule 9(b).

4

### A. Personal Jurisdiction

Defendant argues that this court lacks personal jurisdiction to hear Relator's claims because Relator has failed to plead sufficient facts to establish the requisite minimum contacts with Pennsylvania under *International Shoe Co. v. Washington*, 326 U.S. 310 (1945). The Due Process Clause of the Fifth Amendment requires that individuals only be required to appear in a court if they have voluntarily associated themselves with the territory in which the court sits. *Heft v. AAI Corp.*, 355 F. Supp. 2d 757, 765 (M.D. Pa. 2005) (citing *Burger King v. Rudzewicz*, 471 U.S. 462, 474 (1985)). Courts apply the minimum contacts analysis to determine if a defendant had sufficient contacts with the forum to satisfy due process concerns. *Id.* If the court is satisfied that the defendant had the requisite minimum contacts with the forum, the court must next determine if the "assertion of jurisdiction comports with 'traditional notions of fair play and substantial justice.'" *Id.* (quoting *Int'l Shoe Co.*, 326 U.S. at 316.) Indeed, Relator's contacts with the forum state are tenuous, even viewing the complaint in the light most favorable to the plaintiff. Were this court sitting in diversity, the Defendant's limited association with Pennsylvania may compel dismissal. *See RP Healthcare, Inc. v. Pfizer, Inc.*, No. 12-cv-5129, 2017 WL 4330358, *5 (D. N.J. Sept. 29, 2017), *aff'd sub nom. In re Lipitor Antitrust Litig.*, 722 F. App'x 132 (3d Cir. 2018) (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980)). The FCA,

however, is a statue that authorizes nationwide service of process. 31 U.S.C. § 3732. Thus, the court's inquiry does not rest on an analysis of Defendant's contacts with the Commonwealth of Pennsylvania alone.

In determining personal jurisdiction in an action arising under a statute authorizing nationwide service of process, the Third Circuit has held that:

> [W]here Congress has spoken by authorizing nationwide service of process[], as it has in the Securities Act, the jurisdiction of a federal court need not be confined by the defendant's contacts with the state in which the federal court sits. *See DeJames v. Magnificence Carriers, Inc.*, 654 F.2d 280, 284 (3d Cir. 1981). Following this reasoning, the district courts within this Circuit have repeatedly held that a "national contacts analysis" is appropriate "when appraising personal jurisdiction in a case arising under a federal statute that contains a nationwide service of process provision." *AlliedSignal, Inc. v. Blue Cross of Calif.*, 924 F. Supp. 34, 36 (D. N.J. 1996); *see also Green v. William Mason & Co.*, 996 F. Supp. 394, 396 (D. N.J. 1998) ("[A]n assessment of personal jurisdiction under [a statutory provision authorizing nationwide service of process] necessitates an inquiry into the defendant's contacts with the national forum."). We too are persuaded by the reasoning of our prior opinions on the subject, and, consistent with several of our sister courts of appeals, hold that a federal court's personal jurisdiction may be assessed on the basis of the defendant's national contacts when the plaintiff's claim rests on a federal statute authorizing nationwide service of process.

*Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 369 (3d Cir. 2002). "It necessarily follows that the 'forum' of the federal courts is the entire territory of the United States. Regardless of their location, federal courts are components of the national government, and exercise a portion of its sovereign powers." *Heft*, 355 F. Supp.2d at 765 (citing *Max Daetwyler Corp. v. Meyer*, 762 F.2d 290, 293-95 (3d Cir.

6

1985)). Moreover, where a defendant "resides within the territorial boundaries of the United States," that defendant "has sufficient minimum contacts with the United States that the [c]ourt's exercise of personal jurisdiction does not offend traditional notions of fair play and substantial justice." *Hericks v. Lincare Inc.*, No. 07-cv-387, 2014 WL 1225660, *1 n.2 (E.D. Pa. Mar. 25, 2014) (citing *U.S. v. Metzinger*, No. 94-cv-7520, 1996 WL 412811, *2 n.3 (E.D. Pa. July 18, 1996); *U.S. v. Torkelsen*, No. 06-cv-5674, 2007 WL 4245736, *3 (E.D. Pa. Dec. 3, 2007)). Because it is undisputed that Defendant, a Virginia-based company doing business in the United States, has minimum contacts with the United States, this court has personal jurisdiction over Defendant under the FCA.

**B.** **Venue**

The language of the FCA expressly defines the proper venue for a claim brought for a violation of its terms. Section 3732(a) provides that: "[a]ny action under section 3730 may be brought in any judicial district in which the defendant . . . can be found, resides, transacts business, or in which any act proscribed by section 3729 occurred." 31 U.S.C. § 3732.[4] Thus, a company situated in the United States may be haled into any federal court in any state where that company

---

[4] Several courts have noted that Section 3732(a) operates as a venue provision, despite the word "jurisdiction" in its title. *U.S. ex rel. Thistlethwaite v. Dowty Woodville Polymer, Ltd.*, 110 F.3d 861, 868 (2d Cir. 1997) (comparing 31 U.S.C. § 3732(a) with Section 12 of the Clayton Act, 15 U.S.C § 22, and Section 27 of the Securities Exchange Act of 1934, 15 U.S.C. § 78aa); *see also U.S. v. Universal Fruits & Vegetables Corp.*, 370 F.3d 829, 836 (9th Cir. 2004); *U.S. v. Universal Fruits & Vegetables Corp.*, 29 C.I.T. 673, 679 (2005).

transacts business or has allegedly violated the FCA. The proscriptions in Section 3729 include false claims made to receive payments from the federal government or to receive an award of a federal contract, as alleged in the complaint. *See* 31 U.S.C. § 3729. The narrow question before this court in regards to venue is whether Defendant transacts business in Pennsylvania or whether it has violated the FCA within the bounds of the Commonwealth.

Relator essentially relies on three alleged facts which provide a connection to Pennsylvania: (1) Defendant has bid on contracts involving Pennsylvania; (2) two government contracts situated in Pennsylvania have been awarded to Defendant; and (3) Defendant challenged the award of a contract to a Pennsylvania-based company. (Doc. 15, ¶ 20.) The first contention is not supported by any particular allegations in the complaint. Relator does no more than generally allege that Defendant advertises that it is willing to do work in Pennsylvania on its website, even though it has no current contracts or offices in the state. (*Id.* at ¶¶ 24-27.) It is not clear from the complaint, however, that Defendant *currently* transacts business into Pennsylvania. It appears that Defendant's bidding and advertising are with federal agencies located in Washington, D.C., which contract for federal projects across the country. Similarly, the third contention raised by Relator does not imply contact with Pennsylvania. Relator alleges no interaction within the Commonwealth, or any

contact with the Pennsylvania company itself. Merely referring to a Pennsylvania company that is not a party to the litigation in an administrative action is insufficient to support Relator's assertion that Defendant "transacts" business within the forum. *See Heft*, 355 F. Supp. 2d at 767 (citing *Hanson v. Denckla*, 357 U.S. 235, 254 (1958) ("The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State."). With regard to Relator's second contention, only one contract in Pennsylvania is relevant to the case *sub judice*. One of the contracts actually awarded to, and the only one actually carried out by, Defendant in Pennsylvania was awarded prior to the fraud alleged in the complaint. (*Compare* Doc. 15, ¶ 21 ("in 2009, [Defendant] was awarded contract V529Q00129 relating to work in Butler, Pennsylvania."), *with* ¶ 4 ("As a result of Defendant['s] fraud, from 2010 to 2016, [Defendant] received over $22 million dollars [sic] in [SBA] set-aside contracts.").) Defendant's only contact with Pennsylvania related to Relator's FCA claim is a contract, valued at $42,648, for work in Liberty Township, Pennsylvania. (*Id.* at ¶¶ 22, 80(x).) The Liberty Township contract was awarded on December 11, 2015, pursuant to a HUBZone set-aside. (*Id.* at 80.) An affidavit filed by Amber Peebles, a part-owner of Defendant, indicates that the Liberty Township contract was not carried out, but was cancelled prior to work starting on the project. (Doc. 17, Ex. 1.) Thus, Relator bases its choice of venue

9

on $42,648 out of an alleged $22,000,000 of fraudulently obtained government contracts, or, put another way, two-tenths of a percent (.2%) of the unlawful business alleged in the complaint.

Despite the limited contact with Pennsylvania related to Relator's claims, it appears that any act related to the alleged fraudulent conduct is sufficient to establish venue in Pennsylvania: "[a]ny action under section 3730 may be brought in any judicial district . . . in which *any* act proscribed by section 3729 occurred." 31 U.S.C. § 3732(a) (emphasis added). Taking the allegations in the complaint as true, this contract was obtained pursuant to a HUBZone set-aside while Defendant was providing false information in order to qualify for the program. Arguably, because this contract was never commenced, there were no actual "acts" within Pennsylvania because bidding and subsequent negotiations likely occurred in Washington, D.C. or northern Virginia. However, when "considering a motion to dismiss for improper venue, the court must generally accept as true the allegations in the pleadings and must view the facts in the light most favorable to the nonmoving party." *Sinclair Cattle Co. v. Ward*, 80 F. Supp. 3d 553, 557-58 (M.D. Pa. 2015). Therefore, the court must view a contract entered into for work to be performed in Pennsylvania to involve an "act" proscribed by the FCA in this judicial district. *See Gizinski v. Mission Mobility, LLC*, No. 16-cv-589, 2017 WL 1001448, *2 (M.D. Pa. Mar. 15, 2017) ("The defendant has the burden of

establishing improper venue.") (citing *Myers v. Am. Dental Ass'n*, 695 F.2d 716, 725 (3d Cir. 1982)). Accordingly, venue is proper in the Middle District of Pennsylvania. This conclusion, however, does not end the court's analysis.

Despite finding that venue is proper, the court is empowered to transfer venue in the interest of justice on motion of a party or *sua sponte*.[5] 28 U.S.C. § 1404(a); *Spence v. Colo. Tech. Univ.*, 16-cv-1411, 2016 WL 5661932, *2 (M.D. Pa. Sept. 29, 2016) (internal citations omitted). Pursuant to Section 1404(a):

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented.

28 U.S.C. § 1404(a). The legislative history of the FCA also indicates that Congress considered the efficacy of Section 1404(a) when amending the venue provisions of the FCA:

> This expansion of jurisdiction and venue [Section 3732] is made with a view to more effective litigation by the Government as well as convenience and fairness. It is basically a form of long-arm statute with many familiar counterparts in State law. However, the

---

[5] Defendant does not explicitly request that this court transfer venue based on 28 U.S.C. 1404(a). In arguing that Relator's complaint should be dismissed for improper venue, Defendant argues, in the alternative, that venue should be transferred pursuant to 28 U.S.C. § 1406(a), which relates to transfer of venue in lieu of dismissal where venue is improper. Because this court may *sua sponte* transfer venue under Section 1404(a), we need not decide whether Defendant properly raised that issue. Relator also responded to Defendant's selection of venue and noted that it would prefer a transfer to the District of Columbia. (Doc. 19, pp. 10-11 (citing 28 U.S.C. 1404(a) and *Jumara v. State Farm Ins. Co.*, 55 F.3d 873 (3d Cir. 1995).) Moreover, had this court concluded that venue was improper in the Middle District, the court would have transferred the matter to the proper venue under Section 1406(a) rather than deprive Relator of his day in court.

> Committee is aware of the potential for abuse of this section. Choice of venue could turn more upon which court had provided a previous favorable decision to the Government than upon other factors of convenience or fairness. The Committee will remain sensitive to these potential abuses. Of course, a defendant could always move to transfer a case where appropriate "in the interest of justice and for the convenience of the parties."

S. REP. NO. 99-345, at 32, *as reprinted in* 1986 U.S.C.C.A.N. 5266, 5297 (quoting 28 U.S.C. 1404). Thus, this court will analyze whether a transfer of venue is proper in the interest of justice and for the convenience of the parties.

A transfer of venue is only proper to a district where the "action could have been brought." *Intellectual Ventures I LLC v. Checkpoint Software Techs. Ltd.*, 797 F. Supp. 2d 472, 478 (D. Del. 2011) (citing 28 U.S.C. § 1404(a)). As set forth above, because the FCA authorizes nationwide service of process and "acts" proscribed by the FCA allegedly took place in Virginia and Washington, D.C., both the District of Columbia and the Eastern District of Virginia ("EDVA") would have personal jurisdiction over Defendant and venue would be proper in either district. When deciding whether to transfer a case in the interest of justice pursuant to Section 1404(a), courts apply a multi-factor analysis:

> While there is no definitive list of factors, courts generally consider the following: (1) the plaintiff's choice of forum; (2) the defendant's preference; (3) where the claim arose; (4) the convenience of the parties; [5] the convenience of the witnesses, but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; [6] the location of books and records, similarly limited to the extent that the files could not be produced in the alternative forum; [7] the enforceability of the judgment; [8] practical considerations that

> could make the trial easy, expeditious, or inexpensive; [9] the relative court congestion in the competing courts; [10] the local interest in deciding local controversies at home; [11] the public policies of the fora; [12] and the familiarity of the trial judge with the applicable state law.

("*Jumara* factors") *Clark v. Foley*, No. 08-cv-689, 2008 WL 4279886, *4 (M.D. Pa. 2008) (quoting *Jumara*, 55 F.3d at 879-80). The court will address the *Jumara* factors *seriatim*.

Regarding the first factor, Relator has clearly shown a preference for litigating his claims in the Middle District of Pennsylvania. Usually, plaintiffs are given great deference when choosing their forum, however, "when the central facts of a lawsuit occur outside of the chosen forum, plaintiff's choice of forum is accorded less weight." *Frazer v. Temple Univ.*, No. 13-cv-74, 2013 WL 12152474, *2 (M.D. Pa. 2013) (internal citations omitted). In its brief in opposition to Defendant's motion to dismiss, Relator states that, if this court decides that a transfer of venue is proper, Relator would prefer the transfer to be made to the District Court for the District of Columbia. (Doc. 19, p. 10.) Both parties appear to agree that a substantial number of "acts" giving rise to Relator's claims took place in the Washington, D.C. metro area, and, thus, venue would properly lie in that district. According to Defendant, its "[f]ederal government contracts alleged in the [a]mended [c]omplaint are with agencies that are all located in the Washington, D.C. metro area." (Doc. 18, p. 7.) Although the first factor weighs against transfer because Relator chose to litigate in this forum,

13

Relator's alternative choice weighs in favor of a transfer to the District of Columbia.

Regarding the second factor, Defendant argues that, if venue does not lie in the Middle District of Pennsylvania, this court should transfer the case to the EDVA. Attempting to support transfer to the EDVA, Defendant states that its contracts are with government agencies located in the Washington, D.C. metro area and Defendant is located in northern Virginia, which lies within the EDVA's jurisdiction. (*Id.*) Because Defendant explicitly stated its preference for an alternative forum, the second *Jumara* factor weighs in favor of a transfer to the EDVA.

The third factor, where the claim arose, is neutral between the District of Columbia and the EDVA. Defendant is located in northern Virginia. Thus, the fraudulent employee records were presumably created at, maintained at, and submitted from that jurisdiction. The majority, if not all, of the government entities allegedly defrauded by Defendant, however, are located in Washington, D.C. The only location in Pennsylvania where the claim arguably "arose" would be Liberty Township, located in the Middle District of Pennsylvania. On balance, the third *Jumara* factor is neutral as between the District of Columbia and the EDVA, but weighs against venue remaining in the Middle District of Pennsylvania.

The fourth interest factor, the convenience of the parties, supports a transfer to the District of Columbia. Because Relator is a resident of Maryland and Defendant is incorporated in Virginia, the District of Columbia is a physical midpoint between the two parties. The fifth, sixth, and seventh factors are neutral, because there is no indication that witnesses or books and records would be legally unavailable in this District, the EDVA, or the District of Columbia. However, the eighth factor, relating to the ease of trial, weighs heavily in favor of a transfer to the District of Columbia. Any records or witnesses from the federal government would likely be located in Washington, D.C., and Relator and any owners or employees of Defendant would easily be able to travel to D.C. for trial preparation, depositions, and attendance at any eventual court proceedings. Thus, the eighth factor weighs in favor of a transfer of venue.

The ninth factor, court congestion, is neutral as the court has no evidence of the EDVA's or the District of Columbia's relative congestion. The tenth factor weighs in favor of transfer to the District of Columbia to the extent that Washington, D.C. is the seat of the federal government, and the federal agencies located there have an interest in resolving alleged fraud against them. Conversely, there is no local interest of Pennsylvania in adjudicating a claim involving federal agencies where the only contract awarded in Pennsylvania was never consummated. The eleventh factor is neutral because Relator raises no pendant

15

state law claims. Accordingly, a transfer of Relator's claims to the District Court of the District of Columbia is in the interest of justice and serves the overall convenience of the parties and likely potential witnesses.

**III.    Conclusion**

For the foregoing reasons, this court has personal jurisdiction over Defendant, and venue is proper under the FCA. Thus, Defendant's motion to dismiss is denied. The court, however, finds that the interest of justice and the convenience of the parties would be best served by transferring venue to the United States District Court for the District of Columbia. Accordingly, this case shall be transferred in the interest of justice to the District of Columbia pursuant to 28 U.S.C. § 1404(a). An appropriate order follows.

s/Sylvia H. Rambo  
SYLVIA H. RAMBO  
United States District Judge

Dated: August 29, 2018